THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ARCADIO TORO GOYCO, Defendant and Appellant.

No. 17. Decided February 9, 1962.

*José Rafael Gelpí* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Carlos G. Látimer, Assistant Solicitor General,* for the People. *Santos P. Amadeo* as amicus curiæ.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

In *People* v. *Quiles,* 83 P.R.R. 61 (1961), and *People* v. *Pacheco,* 83 P.R.R. 275 (1961), we considered questions similar to that involved in the case at bar. We held that the fact that the judge who presides the trial of a criminal case had acquainted himself with the same prior to said trial by having read certain sworn statements or heard the testimony of witnesses being examined by the prosecuting attorney and then determine whether there was probable cause for arrest, did not disqualify himself to hear the case on the merits. In this case the question for decision is whether a judge who investigates a case personally and, after an investigation is made, orders the filing of an information against him, is an impartial judge to hear the case guaranteed to every defendant by the due process of law clause.

After investigating the facts imputed to him, appellant was charged by the Judge of the District Court, Cabo Rojo Part, with the offenses of disturbing the peace and violation of the Automobile Act consisting in obstructing the free traffic of vehicles on a public highway. The judge who investigated and ordered the filing of the informations also presided the hearing of the cases. He found him guilty in both and sentenced him to pay a $60 fine or serve 2 months' imprisonment in jail for disturbing the peace and a $15 fine or 15 days' imprisonment in jail for violation of the Automobile Act. He appealed to the Superior Court, Mayagüez Part, and both sentences were affirmed. We issued certiorari to review as prayed for. It presents the question pointed out above.

Following the rule which we established in *In re Marín,* 81 P.R.R. 267 (1959), and which we ratified in *Quiles* and *Pacheco,* it is proper to consider the nature of the procedure

followed in the case at bar and then determine the degree of relationship existing between the judge and the evidence and the probable effects of this relationship on his disinterest and impartiality.

According to the provisions of § 24 of the Code of Criminal Procedure (34 L.P.R.A. § 55), when a judge who investigates "is satisfied that the complaint contains an offense, he shall make a brief investigation hearing witnesses, so as to ascertain the person or persons, *who have committed* the same. If no guilty party appears, he shall dismiss the complaint. Should it appear that there is some *guilty person*, he shall set the case for hearing at the earliest possible date, and shall summon the complainant and the witnesses for the prosecution and the defendant, informing the latter as regards the offense complained of and necessary particulars as to time, place, person, and property, so as to enable the said defendant to understand easily the nature and circumstances of such offense." (Italics ours.)

In the case at bar the procedure established in § 24 copied above was followed. The judge who sentenced the appellant in the District Court investigated the complaint, determined that an offense had been committed, and that the accused was presumably "guilty", and ordered that the corresponding complaints be filed. Then the same judge presided the hearing of the cases and convicted the defendant.

A basic requirement of a fair trial is that it be presided by an impartial judge. *In re Murchison*, 349 U.S. 133 (1955); *Tumey* v. *Ohio*, 273 U.S. 510 (1927); *State* v. *Leland*, 227 P.2d 785 (Ore. 1951) *aff'd*, *Leland* v. *Oregon*, 343 U.S. 790 (1952). That the impartiality of the judge is essential, was established in England more than six hundred years ago. The practice whereby persons who had served on the grand jury which had determined that there was probable cause against the defendant could also serve on the

jury, was abandoned in 1352. Imbau, *The Concept of "Fair Hearing" in Anglo-American Law*, 31 Tul. L. Rev. 67, 70 (1956). Already in the fourteenth century, in England the person who acted as investigator could not act as judge and decide as to the innocence or guilt of the defendant. In our body of laws we have a similar measure. In those cases in which a grand jury intervenes, its members may not serve on the "petit" jury, Act No. 58 of June 18, 1919, 34 L.P.R.A. § 575, and if they serve as members of the jury in the case, the verdict is void and the sentence will be vacated. *People v. Martínez*, 31 P.R.R. 588 (1923). And the lawmaker went even farther in providing that members of the jury which try the case can not serve if a new trial is granted. 34 L.P.R.A. § 681. We see, therefore, that the Puerto Rican lawmaker has wished at all times to guarantee that the trier of the facts be completely impartial. That there be no doubt on the part of the defendant that the person who has power to deprive him of his freedom is in some way influenced by something else other than the evidence heard at the trial.

In the present case the situation is not the same as that which we confronted in *Quiles*, in which we said:

"In the case before the bench, the judge a quo did not examine any witnesses. His participation consisted in examining a sworn deposition to determine whether there was probable cause to issue an order for search, and later another deposition to determine whether there was cause for arrest. Since he examined no witnesses there was no possibility that anything became etched on his mind that might influence a judge such as when he hears and sees a person testifying. His preliminary intervention in the proceedings is confined to the essentially passive participation as a judge, who in a completely impersonal manner examines some documents for purposes of determining whether the same are of sufficient weight to justify the order of arrest. His was not the active and zealous conduct of an accuser invested with the duty of bringing an offender before the court of justice, who devotes himself fully, with the vivacity and dynamic action required of his office of public prosecution, to the task of gather-

ing the necessary evidence to support the charge which he is to file."

In this case the judge who presided the trial and convicted the defendant examined the witnesses and determined that an offense had been committed under the provisions of § 24 of the Code of Criminal Procedure. There exists a possibility that the impressions produced on his mind might influence the weighing of the evidence on the day the case was tried. His intervention was more active, since he intervened in order to gather the necessary evidence to support the conclusion reached by him that the defendant was guilty.

■ In this situation, the applicability of the case *In re Murchison, supra,* where it was established that the due process of law is violated when a case is heard on the merits before the same trier who already took part in the investigation of the facts of the case, seems clear. In the *Murchison* case it was said:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' [Citation.] Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' [Citation.]

"It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. Perhaps no State has

ever forced a defendant to accept grand jurors as proper trial jurors to pass on charges growing out of their hearings. A single 'judge-grand jury' is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer."

See Notes: *Disqualification of Judges for Bias*, 44 Cal. L. Rev. 425 (1956) ; 69 Harv. L. Rev. 162 (1955).

In *Marín* we distinguished the *Murchison* case in the light of the facts of the latter. In so doing, we said that among the distinguishing facts and circumstances was the fact that the judges of this Court, in the *Marín* case, never contacted the witnesses nor intervened in any manner whatsoever in the investigation, that the complaint was prepared by the prosecuting attorneys, and they supported it before the court by the evidence and methods which they deemed convenient. We applied to *Quiles* and *Pacheco* what was said in *Marín*. However, in the present case, as we have seen, the judge contacted the witnesses directly, intervened in the investigation, and ordered the filing of the complaint pursuant to § 24 of the Code of Criminal Procedure, and on the day of the trial the judge himself assumed the presentation of the evidence because the District Court had no prosecutors although he did not act as such. This case comes, therefore, within the proscription of the *Murchison* case.

The Spanish Code of Criminal Procedure in force in Puerto Rico during the Spanish domination, in its § 54 provided that the judge who investigated was susceptible to challenge, and § 55 made his disqualification mandatory. How can we explain then that at the beginning of the century our lawmakers, with the fresh experience of the Spanish tradition that a judge who investigates should not try the

case, could enact the provision contained in above cited § 24? We believe the explanation is clear. The amicus curiae points it out. The remedy was established in the Code itself. A trial de novo was granted as a matter of law before a higher court, where the case would commence anew as if it were being heard for the first time. In that sense, the practical effect of the prosecution before the first court could be considered as a preliminary hearing. The right to a trial de novo cured the constitutional defects of the trial before the trial court. *Application of Borchert*, 359 P.2d 789 (Wash. 1961); *State v. González*, 95 P.2d 673 (N. M. 1939); *Hill v. State*, 298 S.W. 321 (Ark. 1927). The right of the defendant to a fair trial presided by an impartial judge was thereby guaranteed in principle. The right to a trial de novo was the guaranty. Now, with the enactment of the Judiciary Act in 1952 this right to a trial de novo has disappeared (4 L.P.R.A. § 122). Defendant's right that in the last instance his trial would be presided by a judge whose bias could not be questioned, thereby disappeared in the District Court in those cases in which the presiding judge was the judge who had made the investigation.

The judge who investigates should not be the judge who tries. Already in 1882, by Royal Decree of September 14 of that year, in the Statement of Motives of the Spanish Law of Criminal Procedure, commenting on the provisions of §§ 54 and 55 above cited, it was stated:

"These two defects which are so important [delay in opening the trial and constant fear that it be reopened] are not, however, the only ones nor perhaps the most serious in our procedure. The worst of all is...that the investigating judge is the same one who pronounces the sentence with all the bias and prejudices produced in his mind by the investigation."

■ It is proper to repeat here what we stated in *Reyes v. Superior Court, ante*, p. 27:

"We should not be remiss to repeat, merely on the grounds that it has been said before on innumerable occasions, that one

of the most precious rights of a citizen in our community is that, when accused of a crime, he shall be tried under such circumstances as to insure that the trial shall be surrounded by all the guarantees to make a fair trial possible."

The impartiality of the judge is the fundamental basis of a trial. And that impartiality is what creates faith in justice on the part of the citizens; and it is on that faith that respect for the judges by the citizens is based. It is the duty of the courts to see that this faith shall never vanish.

It is worth repeating here the words of Judge Vanderbilt which appear in his work "The Challenge of Law Reform" (Princeton, 1955), at pp. 4 and 5:

"It is in the courts and not in the legislature that our citizens primarily feel the keen, cutting edge of the law. If they have respect for the work of the courts, their respect for law will survive the shortcomings of every other branch of government; but if they lose their respect for the work of the courts, their respect for law and order will vanish with it to the great detriment of society, for it surely does not have to be argued that respect for law is all important for the survival of popular government."

The judgment appealed from will be reversed and the case remanded for a new trial.

Mr. Justice Rigau dissented.